UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEVAUGHN CHEVIS,

                         Petitioner,                     Case No. 2:15-cv-14214
                                                   Hon. Victoria A. Roberts

v.

PAUL KLEE,

                         Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. 1], (2) GRANTING A CERTIFICATE OF APPEALABILITY WITH RESPECT TO PETITIONER'S FIRST CLAIM, AND (3) DENYING PETITIONER'S MOTION TO EXPAND RECORD AND/OR FOR AN EVIDENTIARY HEARING [Dkt. 10]**

This is a habeas case brought by a Michigan prisoner through counsel under 28 U.S.C. § 2254. SeVaughn Chevis ("Petitioner") was convicted after a jury trial in the Kent Circuit Court of two counts of first-degree criminal sexual conduct. MICH. COMP. LAWS § 750.520b(1)(a). Petitioner was sentenced to two concurrent terms of 10 to 40 years' imprisonment. The petition raises three claims: (1) Petitioner was denied the effective assistance of counsel for failure to consult with and present at trial an expert in forensic psychology and forensic interviewing, (2) counsel was ineffective for failing to impeach the testimony of the complainants, and (3) counsel was ineffective for failing to present evidence of Petitioner's mental impairment.

The Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court will, however, grant Petitioner a certificate of appealability with respect to his first claim.[1]

_____

[1]Though he is represented by counsel, Petitioner filed a pro se motion to expand the record and for an evidentiary hearing. Dkt. 10. The motion is denied because the state courts adjudicated Petitioner's habeas claims on the merits after holding an evidentiary hearing in the state trial

## I. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant's convictions stem from allegations that he engaged in oral sexual penetration with six-year-old male twins during the summer of 2008. The mother of the twins testified that defendant lived next door to them during the time in question and that she allowed the twins to go to defendant's home to play video games with him. The twins, who were eight years old at the time of trial, testified that defendant made them engage in sexual acts with him before defendant would permit them to play video games. The twins both claimed, among other allegations, that defendant made them "suck" defendant's "private" part. One of the twins indicated that defendant "made milk" and that "milk" came out of defendant's penis. Defendant was 14 years old when the offenses were committed, and he was initially charged as a juvenile. Defendant rejected a plea offer made in the juvenile court and was subsequently charged and convicted as an adult. After sentencing, defendant filed a motion for new trial, which was denied. Thereafter, this Court granted defendant's motion to remand "for an evidentiary hearing and a determination whether defendant . . . received constitutionally-deficient representation . . . for the reason stated in defendant's motion[.]" *People v. Chevis*, unpublished order of the Court of Appeals, entered June 13, 2012 (Docket No. 304358). The order allowed defendant to file "a supplemental brief pertaining to the issue raised on remand." *Id.* Defendant's remand motion focused primarily on defense counsel's "failure to consult with and present an expert in forensic psychology at [defendant's] trial." The remand motion also mentioned defense counsel's failure to utilize the Michigan Forensic Interview Protocol in crossexamination of the prosecution's witnesses. Following a *Ginther* hearing [*People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973)] conducted on remand, the trial court again denied defendant's motion for new trial, rejecting the claims of ineffective assistance of counsel.

*People v. Chevis*, No. 304358, 2013 WL 5539279, at *1 (Mich. Ct. App. Oct. 8, 2013).

Petitioner's appellate brief in the Michigan Court of Appeals raising the following claims:

I. The trial court erred where it found that trial counsel's (1) failure to challenge the testimony of witnesses, (2) failure to object to the admission of a victim's written statement, (3) failure to object to the testimony of Dr. Debra Simms and (4) failure

---

court. Review of the petition is limited to the record that was before the state court. See *Cullen v. Pinholster*, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011).

to fully inform Mr. Chevis of the plea offer did not amount to ineffective assistance of counsel. Furthermore, the trial court erred where it did not address multiple instances of ineffective assistance of counsel raised and briefed by Mr. Chevis in his timely motion for new trial including trial counsel's (1) failure to adequately cross examine the State's witness regarding the use of a forensic interview protocol, (2) failure to call an expert regarding the forensic interview protocol, (3) failure to demand a ruling from the trial court regarding admission of the preliminary examination transcript in order to impeach [EM1] and [EM2], (4) failure to introduce evidence of [Chevis'] developmental deficiencies, (5) failure to correct the preliminary exam transcript prior to trial, and (6) failure to object to various testimony given by [EM1] and [EM2] without the proper foundation, all of which were grounds for reversal of his convictions.

II. Defendant was denied his rights to due process and a fair trial as a result of the prosecutor's misconduct and counsel was ineffective in failing to object to that misconduct.

Along with his appellate brief, Petitioner filed a motion to remand for an evidentiary hearing on his claims of ineffective assistance of counsel. The motion was granted, and the trial court held a hearing on Petitioner's claims. The trial court denied relief, finding that Petitioner's claims were without merit. Dkt. 6-23. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished opinion, with a dissenting opinion that Petitioner's first claim merited a new trial. *Chevis*, 2013 WL 5539279.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court raising the following claims:

I. The majority decision in the Court of Appeals was the result of a misapplication of the law, and a broadening of the holding in *People v. Smith*. Regardless of whether this Court holds that the *Smith* and *Swartz* line of cases apply or the *Beckley* and *Peterson* line of cases apply, Dr. Simms' testimony under all of the cases and the relevant case law was improper and amounted to improper credibility vouching by the prosecution's expert witness. Consequently, defense counsel was ineffective for failing to object to the testimony and the trial court erred in admitting the testimony.

II. The majority in the instant case erred in its conclusion that although defense counsel was arguably ineffective in failing to consult with and present an expert in forensic interviewing/psychology, and that his failure did not prejudice the outcome of Mr. Chevis' trial.

III. The majority opinion erred where it did not find that trial counsel was ineffective where he failed to impeach the complainants or to flesh out the inconsistencies in the complainants' testimony through the testimony of other available witnesses. The majority also erred where it did not find trial counsel ineffective for failing to introduce evidence of Mr. Chevis developmental delay.

The Michigan Supreme Court denied the application; it was not persuaded that the questions presented should be reviewed by the Court. *People v. Chevis*, 845 N.W.2d 100 (Mich. 2014) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Under the "unreasonable application" clause of § 2254(d)(1), habeas relief is available if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation

4

marks omitted). "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous," but rather "must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted). Indeed, under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702; 188 L. Ed. 2d 698 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376; 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16; 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

### III. Analysis

Petitioner raises three claims of ineffective assistance of trial counsel. Both the state trial court and Michigan Court of Appeals denied the claims on the merits.

5

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Even on direct review, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotes omitted)).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

"The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

6

A. Failure to Consult with an Expert in Forensic Psychology and Forensic Interviewing

Petitioner's first and primary claim is that his trial counsel failed to investigate and offer favorable testimony at trial from an expert in forensic interviewing and forensic psychology. He asserts that such an expert would have raised serious questions about how the complainants were questioned during the police investigation, how the questioning violated established forensic protocols, and how the violations undermined the reliability of the complainants' statements.

The trial court held an evidentiary hearing on the claim, and found that Petitioner's counsel did not perform deficiently for failing to present an expert witness for the defense. See Dkt. 6-23. Petitioner then presented the claim to the Michigan Court of Appeals. After reciting the familiar *Strickland* standard and addressing allegations of ineffective assistance of counsel not presented in the habeas petition, the state court rejected the claim as follows:

> Next, we shall address defendant's arguments, as further developed at the *Ginther* hearing following remand, that defense counsel was ineffective for failing to consult with and retain for trial an expert in forensic psychology and interviews and for failing to effectively cross-examine the prosecution's experts regarding forensic interview protocol as to child victims of sexual abuse. These arguments are based on the testimony of Dr. Daniel Swerdlow-Freed and defense counsel at the *Ginther* hearing. Decisions regarding how to question witnesses are presumed to be matters of trial strategy that we will not assess with the benefit of hindsight. *People v. Horn*, 279 Mich. App. 31, 39 (2008). The failure to call or question witnesses is presumed to be a matter of trial strategy that we will not second-guess with the benefit of hindsight, and the failure only constitutes ineffective assistance of counsel when it deprives the defendant of a substantial defense. *People v. Dixon*, 263 Mich. App. 393, 398 (2004). "'A substantial defense is one that might have made a difference in the outcome of the trial.'" *People v. Chapo*, 283 Mich. App. 360, 371 (2009) (citation omitted). We do recognize that this Court cannot insulate the review of counsel's performance by simply calling it trial strategy, as it must also be determined whether the strategic choices were made after less than complete investigation. *Trakhtenberg*, 493 Mich. at 52.
>
> Given defense counsel's testimony at the *Ginther* hearing, along with the testimony by Dr. Swerdlow-Freed, it is certainly arguable that defense counsel's performance fell below an objective standard of reasonableness relative to his failure to cross-examine the prosecution's experts in regard to forensic interview protocol

7

and his failure to consult with and retain an expert in forensic psychology and interviews. However, defendant fails to establish the requisite prejudice. With respect to Dr. Swerdlow-Freed's testimony, he testified about the need to ask open-ended questions, the need to stay away, for the most part, from leading questions, the need to avoid coercive questions, and the need to examine alternate hypotheses when questioning a child who allegedly was the victim of sexual abuse. That said, the prosecutor's expert witnesses also testified to the same protocol in their testimony, so we cannot help but question the prejudice to defendant in not having his own expert testify to the protocol.

Dr. Swerdlow-Freed testified that the interviews of the twins by Holly Bathrick, who was a prosecution witness and testified about forensic interview protocol, were problematic because the interviews were not recorded and because the report ultimately composed by Bathrick regarding the interviews was based on handwritten notes taken by a detective who observed the interviews. We fail to see how the presentation of expert testimony that such a procedure was not proper would have changed the outcome in this case. And defense counsel, even without an expert, made much of the issue, arguing as follows in his closing:

> We have this lady [Bathrick] take the stand and tell us all of her credentials and how she does things to try to assess the truth, and try to figure out what happened, and tell us all the methods by which she does this[.] . . . And then, days after doing that, days after doing this interview, she doesn't even rely on her own notes; she gets the police officer's notes, who's watching through a glass, who doesn't tape record it, who doesn't do any of this stuff, and then she writes a report. You're the professional, you did the interview, write your own notes.

That the interviews should have been recorded or that the report should have been based on Bathrick's own notes in order to more accurately reflect the interviews is something that a lay person could certainly grasp and understand. Had Dr. Swerdlow-Freed testified on behalf of defendant at trial on this matter consistent with his testimony at the *Ginther* hearing, it would not have added much to the defense and clearly not enough to alter the result.

Dr. Swerdlow-Freed also testified about the apparent lack of clarity in some of Bathrick's questions, the possibility that some of the questions were leading or suggestive, and the apparent failure to follow-up on some of the statements by the twins, which went to the need to explore alternate hypotheses. We use the terms "apparent" and "possibility," given that Dr. SwerdlowFreed had to couch these views based on speculation, where he emphasized that Bathrick's report was not sufficiently detailed to allow him to make conclusive determinations, which is why, in his view, such interviews should be recorded. We, of course, are then also left in a swirl of speculation. Had Dr. Swerdlow-Freed or a comparable expert been

8

available to defense counsel prior to trial for consultation and/or at trial as a witness, the only way to have further explored the matter in any meaningful fashion would have been through questioning and confrontation of Bathrick while on the witness stand. Had that occurred, Bathrick may have been able to elaborate in a manner that wholly negated the concerns raised by Dr. SwerdlowFreed, or her testimony may have been significantly impeached. Bathrick was not called by defendant to testify at the *Ginther* hearing, so defendant again has failed to show the necessary prejudice. In that same vein, we can only speculate that had defense counsel been fully aware of all aspects of forensic interview protocol, it would have made a difference in the outcome. Cross-examination of the prosecution's experts that challenged whether the proper protocol was employed may have just as easily resulted in elaboration by the witnesses that solidified their opinions.

A good portion of Dr. Swerdlow-Freed's testimony was devoted to supposed post-event influences of others on the twins that called into question the twins' credibility. The basis of the doctor's position was simply the extensive inconsistencies and contradictions in the accounts given by the twins as to what transpired. While we do not endorse the trial court's reasoning in rejecting defendant's arguments, some of which found no support in the record, we do share the concerns voiced by the court and the prosecutor at the *Ginther* hearing regarding Dr. Swerdlow-Freed's credibility and improper-influence conclusions predicated on inconsistent and contradictory accounts given by the twins. The concern was that the issue of credibility based on different and conflicting versions of what occurred is a matter for the jury. Had Dr. Swerdlow-Freed or a comparable expert been retained by defendant for trial and testified to credibility and improper influences, there may have been a basis to exclude the testimony as invading the province of the jury. Regardless, it would have added little to the defense, as lay persons are more than capable of understanding that inconsistencies in accounts relative to an alleged event call into question the credibility of persons who claim that the event took place. Obviously, the jurors here found the twins credible regardless of the numerous inconsistencies.

While the twins' testimony about the type and degree of sexual contact did vary depending on the person to whom they related the incidents, the twins always maintained that some type of penetration occurred. Most significantly, one of the boys reported to a forensic interviewer and then wrote in response to a question during trial that during the incidents defendant "made milk." The child indicated that "milk" came from defendant's penis. This evidence is consistent with a young child describing the act of ejaculation. The following is an excerpt from the cross-examination of Dr. Swerdlow-Freed by the prosecutor at the *Ginther* hearing:

> Q. And you were concerned about the question that was asked, "Did anything come out of his penis?"

> A. Right.

9

Q. Do you think that that suggested the answer "milk"?

A. It suggested – it could have suggested that something came out of his penis.

Q. But would it suggest the statement that milk came out of his penis?

A. No.

Q. Would it be fair to say that, if you heard a description of milk coming out of the penis, that that's – by a six-year-old, that that's probably describing semen?

A. I would agree with that.

Had such a colloquy occurred at trial, it certainly would not have benefitted defendant. More likely, the prosecution would have emphasized the testimony in closing arguments and the jury would have considered it damaging to the defense. In sum, assuming that defense counsel was ineffective for failing to consult with and retain for trial an expert in forensic psychology and interviews and for failing to effectively cross-examine the prosecution's experts regarding forensic interview protocol, defendant has failed to satisfy his burden to show that the errors were prejudicial, i.e., that there existed a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Carbin*, 463 Mich at 600.

*Chevis*, No. 304358, 2013 WL 5539279, at *12-15.

Petitioner asserts that this decision was unreasonable because the defense expert would have undermined the use of Bathrick's recollection of the interviews, undermined the reliability of the interview reports, attacked Bathrick's competence in conducting the interviews, provided the jury with specific examples where Bathrick's reports indicated a failure to comply with the forensic interview protocol, and provided the jury an explanation for the variance in the complainants' allegations. Petitioner asserts that defense expert testimony was critical because the entire case hinged on the credibility of the two young complainants. He notes there were no admissions of guilt by Petitioner, and no corroborating forensic evidence. Petitioner asserts that a defense expert's

10

testimony was especially critical because Bathrick testified that the forensic interview was intended to gather the truth from the complainants, and that testimony was left unchallenged.

While the claim obviously presented a very close question for the Michigan Court of Appeals on direct review as evidenced by the dissenting opinion and lengthy and detailed analysis by the majority, the question here is significantly narrower. Here, Petitioner must show that the majority decision of the Michigan Court of Appeals was so wrong that it is not even reasonably debatable by fairminded jurists. See *Woods v. Etherton*, 136 S. Ct. 1149, 1152; 194 L. Ed. 2d 333 (2016) (grant of habeas relief reversed when it was "not beyond the realm of possibility that a fairminded jurist could conclude" that habeas petitioner was not prejudiced by his counsel's alleged deficient performance); *Donald*, 135 S. Ct. at 1377 ("When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.").

It is not beyond the realm of possibility for a fairminded jurist to conclude that Petitioner failed to demonstrate that he was prejudiced by his counsel's failure to call a defense expert. Swerdlow-Freed testified at the hearing about characteristics of the complainants' statements during interviews and elsewhere that led him to conclude that their testimony was not credible. But the state court found that such a conclusion, which invaded the exclusive province of the jury, would most likely not have been admissible. *Chevis*, 2013 WL 5539279, at *12. Further, despite the defense expert's testimony regarding inconsistencies in the complainants' accounts and apparent suggestiveness during the interviews, the complainants did consistently state that at least some form of penetration occurred. The inconsistencies in the complainants' accounts concerned the number, type, and specific circumstances of the sexual encounters, and they were addressed by defense counsel on cross examination and closing argument. Swerdlow-Freed also testified as to the forensic

11

interview protocols, the reasons behind them, and the apparent violations of the protocols. The prosecutor's expert, however, also testified about the protocols and their importance and function. A fairminded jurist might conclude that given the limitations that might have been placed on a defense experts' testimony regarding the credibility of the complainants, the fact that the jury was informed about the forensic interview protocols and function, and in light of the fact that inconsistencies in the complainants' testimony were covered during cross examination, Petitioner did not demonstrate a reasonable probability of a more favorable result. See *Piontek v. Palmer*, 546 Fed. Appx. 543, 551-52 (6th Cir. 2013).

Furthermore, much of the defense expert's criticism regarding the forensic interview conducted by Bathrick was based on assumptions the expert made about how the interview was conducted that were not apparent in the record. Indeed, a major theme of the criticism was that the interview was not recorded. This led the defense expert to couch the criticisms in terms of apparent or possible suggestiveness. Petitioner could have, but did not, call the prosecution's trial expert at the post-conviction evidentiary hearing to determine whether, in fact, the criticisms were well-founded. *Chevis*, 2013 WL 5539279, at *12. In other words, despite the opportunity to do so, Petitioner left unanswered the question of what would have occurred at trial had a defense expert raised concerns about suggestiveness during the interviews. It is possible that the prosecutor's expert would have allayed the concerns by testifying with further details regarding how the interviews were conducted. In light of this gap in the record, a fairminded jurist could reasonably find that Petitioner only demonstrated the possibility of actual prejudice, rather than demonstrating that he was actually prejudiced. See, e.g., *Richter*, 562 U.S. at 112 (uncalled expert witness testimony established "nothing more than a theoretical possibility" in support of defense theory).

Additionally, and as noted by the state appellate court, not all of the defense expert's

12

testimony would have benefitted Petitioner. Swerdlow-Freed conceded that nothing in the prosecution expert's interview suggested the complainant's response that "milk" came out of Petitioner's penis. The defense expert then conceded that the complainant's response was probably the description of semen. Dkt. 6-18, at 90. This testimony would have strengthened the prosecutor's case in that it allowed for an argument that the defendant's own expert testified that the complainants' described semen coming out of Petitioner's penis despite nothing in the forensic interview suggested this description. *Chevis*, 2013 WL 5539279, at *12. In light of this potentially devastating concession, it was not beyond the realm of possibility for a fairminded jurist to conclude that Petitioner did not demonstrate *Strikland* prejudice.

Finally, Petitioner's reply brief asserts that his claim is indistinguishable from the claim presented by the habeas petitioner in *Spaulding v. Larson*, No. 13-cv-10131-JEL-MAR, (E.D. Mich. Aug. 11, 2016), in which habeas relief was granted for failure of defense counsel to call an expert witness to attack the forensic interview of a sexual assault victim. *Spaulding* obviously does not constitute binding precedent, and that case–as this one–was essentially fact-driven. There is no indication in *Spaulding* that the defense expert was limited to testifying to "apparent" or "possible" suggestiveness in the forensic interviews. Nor does the opinion in *Spaulding* indicate that the defense expert made any devastating concessions. The complainant in *Spaulding* was a teenager. Here, the complainants were young children, so the defense expert's concession that they described semen coming from Petitioner's penis was powerfully incriminating.

Moreover, the Michigan Court of Appeals in *Spaulding* applied the incorrect standard to determine whether the petitioner was prejudiced, thereby allowing the Federal habeas court to conduct a de novo review of whether Petitioner was prejudiced. *Spaulding*, at 38-41. Here in contrast, the Michigan Court of Appeals stated the correct standard of review under *Strickland*, and

13

unlike *Spaulding* § 2254(d) deference applies. This Court therefore declines to follow *Spaulding*.

In light of the deferential AEDPA standard, said to be "doubly deferential" in analyzing an ineffective assistance of counsel claim, *Burt*, 134 S.Ct. at 13, the Court finds that the state court's finding of no prejudice was reasonable. It is within the realm of possibility for a fairminded jurist to conclude that the failure to call a defense expert did not, with reasonable probability, affect the outcome of the trial. *Woods*, 135 S. Ct. at 1377. The Michigan Court of Appeals' thorough and fact-specific analysis provided at least a reasonable basis for finding a lack of prejudice. The state court assessed the proposed defense expert testimony and reasonably concluded based on the weight of the competing evidence that there was not a reasonable probability that Petitioner would have been acquitted even with the defense expert testimony. See, e.g., *Sears v. Upton*, 561 U.S. 945, 955-56 (2010) (per curiam) (explaining that a proper analysis of prejudice under *Strickland* requires a "probing and fact-specific analysis" whereby the state court takes into account "the newly uncovered evidence" along with the evidence introduced during trial to assess whether there is a reasonable probability of a different result). Given the constraints of review imposed by § 2254(d), Petitioner fails to demonstrate entitlement to habeas relief with respect to this claim.

B. Failure to Impeach the Testimony of the Victims

Petitioner's second allegation of ineffective assistance of counsel asserts that his trial counsel failed to impeach the two victims regarding inconsistencies in their accounts of the assaults. He argues that both complainants gave drastically different details of their allegations throughout the investigation and court proceedings. He asserts that at some points they claimed various sexual acts occurred, but at other times they claimed no sexual acts happened. Petitioner asserts the complainants gave inconsistent statements about whether there was anal penetration, or whether Petitioner ejaculated. Petitioner argues that his trial counsel did not use these inconsistencies to

14

impeach the complainants.

The Michigan Court of Appeals rejected this claim on the following basis:

Defendant first asserts that defense counsel failed to adequately challenge the inconsistency of the twins' testimony. We disagree. Defense counsel challenged the testimony of the two boys and attempted to impeach them with prior inconsistent statements. While one child testified on direct examination that he twice had to perform oral sex on defendant, that his brother had to do the same thing, and that defendant engaged in anal sex with the twins, defense counsel elicited testimony from the boy on cross-examination that he never saw defendant's penis. Defense counsel additionally attempted to impeach the child as to certain statements by showing him his conflicting preliminary examination testimony, although counsel had difficulties using the transcript for impeachment, chiefly due to the boy's young age.

The other twin wrote on a paper during direct examination that he saw his brother put his penis in defendant's anus and that defendant "made milk." He testified that defendant made him put his penis in defendant's anus as well. The child further testified that during the incident, defendant shut the door to the room they were in and put towels over the door so as to make it difficult to open. During cross-examination, defense counsel was able to elicit from the child that prior to trial, he had never told anyone that he had been locked in the room with defendant or that the twins were made to put their penises in defendant's anus. As to this child, defense counsel tried to utilize his prior preliminary examination testimony but experienced the same difficulties that he had with the other boy. However, the trial court allowed defense counsel to read into the record a portion of this child's preliminary examination testimony, which showed inconsistencies with his trial testimony. The preliminary exam transcript excerpt was also admitted into evidence. Given the children's young ages, directly impeaching them through their own prior inconsistent statements understandably proved difficult, as reflected in counsel's efforts. It could also be potentially risky, placing defense counsel in the precarious position of being seen as insensitive or bullying the boys. Despite these difficult circumstances, counsel did elicit some inconsistencies and was able to show that the boys' testimony varied from some of their statements made to other persons and their preliminary examination testimony. We also note that there were inconsistencies between the trial testimony of each child. In light of the record and under the difficult circumstances, we cannot conclude that defense counsel's performance relative to eliciting and showing inconsistencies fell below an objective standard of reasonableness.

*Chevis*, No. 304358, 2013 WL 5539279, at *3.

The state appellate court accurately described defense counsel's strategy in confronting the

15

complainants. Contrary to Petitioner's allegations, defense counsel did address inconsistencies in the complaints' statements during trial.  Affording the state court's opinion the "doubly deferential" standard, *Cullen*, 563 U.S. at 190, and affording counsel the strong presumption that he "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt,* 134 S. Ct. at 17 (quoting *Strickland*, 466 U.S. at 690 (1984), the Court finds that Petitioner has failed to demonstrate entitlement to relief. Both defense counsel and the state courts–especially the trial court–were in a far better position than this Court to determine just how far the minimum standards for effective trial advocacy required defense counsel to press the complainants' regarding their prior statements in light of their young age and the specific circumstances of the case. A reasonable argument can be made that defense counsel performed adequately in challenging the young complainants on the stand. The claim is therefore without merit.

 C. Failure to Present Evidence of Petitioner's Mental Impairment

Petitioner's final allegation of ineffective assistance of counsel asserts that his counsel failed to offer evidence of Petitioner's developmental delay. Petitioner asserts that his counsel was aware of a report from the Wayne County Juvenile Court regarding his developmental history, psychological testing, and mental status exam. Petitioner notes that the report found that he was functioning in the mild mental retardation classification of intelligence, had difficulty with comprehension and understanding, did not clearly understand the meaning of words, and had a deficit in verbal comprehension. Petitioner asserts that this evidence was relevant to counter the prosecutor's narrative that Petitioner was a sexual predator and to explain why he associated with children younger than him.

The state appellate court denied this claim as follows:

Defendant next contends that counsel was ineffective for failing to introduce

16

evidence of defendant's developmental deficiencies. We disagree. While evidence that defendant functioned at a lower than normal level for a 14-year-old may have served to explain why he spent time with the twins in the first place, as opposed to defendant being an outright predator as characterized by the prosecution, it would not have supported the ultimate defense that no sexual assaults took place. That defendant played video games with younger boys because he functioned at a younger level himself did not negate the possibility that he sexually assaulted the twins. Furthermore, evidence that defendant was developmentally disabled may have possibly led a juror to more easily accept the twins' claims predicated on the notion that a developmentally disabled minor might not recognize the inappropriateness of certain behaviors, although not rising to the level of a legal defense. With respect to this argument, we cannot conclude that defense counsel's performance was deficient, nor that defendant was prejudiced by any presumed deficient performance.

*Chevis*, No. 304358, 2013 WL 5539279, at *10.

This decision does not fall outside the realm of possible fairminded resolutions of this claim. It is at least reasonable to conclude that offering evidence of Petitioner's mental deficiencies ran he risk of explaining why he sexually assaulted the young complainants without rising to the level of providing him with a legal defense to the charges. Defense counsel was not required to present potentially harmful evidence. The claim was not unreasonably adjudicated by the state courts.

### IV. Certificate of Appealability

In order to appeal the Court's decision, Petitioner must obtain a certificate of appealability. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

The Court finds that jurists of reason could debate the Court's conclusion that Petitioner's

first claim is without merit. The Court will therefore grant a certificate of appealability with respect to his first claim. The Court will deny a certificate of appealability with respect to his remaining claims because jurists of reason would not debate the Court's resolution of those claims.

V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **GRANTS** a certificate of appealability with respect to his first claim, and **DENIES** a certificate of appealability with respect to his remaining claims.

**SO ORDERED.**


<u>S/Victoria A. Roberts</u>
Hon. Victoria A. Roberts
United States District Judge

Dated: January 4, 2017

18